
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

---

| | |
|---|---|
| KANSAS CITY SOUTHERN RAILWAY CO. | CIVIL ACTION NO. 13-00098 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| BNSF RAILWAY CO. | MAGISTRATE JUDGE HORNSBY |

---

### MEMORANDUM RULING

In this action for declaratory judgment, Plaintiff Kansas City Southern Railway Co. ("KCSR") and Defendant BNSF Railway Co. ("BNSF") dispute whether BNSF has the right to opearate its locomotives on certain tracks near Lake Charles, Louisiana without the permission of KCSR. BNSF has filed a motion to dismiss on the issue of whether this Court has subject matter jurisdiction to adjudicate the suit. [Record Document 8]. In response, KCSR argues that this Court has jurisdiction under 28 U.S.C. § 1332 because the parties are diverse, the amount in controversy requirement is satisfied, and the complaint asserts a contractual, i.e., state law, basis for its alleged right to deny BNSF locomotives access to the tracks. BNSF contends, however, that under 49 U.S.C. § 11321(a) and the precedent set by several United States Courts of Appeal, the Surface Transportation Board ("STB") has exclusive jurisdiction over this dispute because it alone has the power to determine whether a prior STB order allegedly granting BNSF access rights to the same tracks abrogates KCSR's contractual rights. For the following reasons, the Court finds that it lacks subject matter jurisdiction and **GRANTS** BNSF's Motion To Dismiss.

I.      **Factual and Procedural Background**

The controversy in this case stems from two competing sources of trackage rights to the same Lake Charles area railroad tracks:[1] (1) a series of joint use agreements between KCSR and Texas & New Orleans Railroad ("T&NO"—today, Union Pacific) granting KCSR the contractual right to deny non-Union Pacific trains access to the tracks; and (2) a series of orders from the STB that appear to grant BNSF the right to access these tracks as a condition of the 1996 merger between Southern Pacific ("SP") and Union Pacific ("UP").

From 1934 to 1996, KCSR and T&NO, which became SP in 1961, separately or jointly had use of most of the railroad tracks that passed through the Lake Charles terminals. [Record Document 4, p. 4]. Four joint use agreements executed between 1934 and 1955 govern their rights over these tracks. [Record Document 4, pp. 5-6]. These agreements prevent either party from granting access to the tracks to third parties without the express consent of the other party. [Record Document 4, p. 5]. At some point before 1996, UP also gained indirect access to the Lake Charles area through so-called "reciprocal interchange agreements" wherein KCSR or SP would use their locomotives to haul UP cars to UP locomotives waiting beyond the three Lake Charles terminals. [Record Document 4, p. 5].

---

[1]There are three terminals in the Lake Charles area: (1) West Lake Charles, (2) Westlake, and (3) Lake Charles.

In 1995, UP and SP brought a proposal to merge before the STB (successor to the Interstate Commerce Commission). The STB not only possesses exclusive authority over the approval and supervision of railroad mergers under 49 U.S.C. § 11321(a), but also has the power to impose conditions on the approval of mergers when necessary to protect certain statutorily enumerated interests, such as maintaining competitive railing service. 49 U.S.C. § 11324. Fearing that the merger between UP and SP would create an uncompetitive market in the Lake Charles area, the STB proposed granting limited trackage rights to BNSF as a condition of approval of the merger. Throughout the public comment period, KCSR objected to the grant of new rights on the ground that the STB's concerns regarding competitiveness near Lake Charles were unfounded. Nonetheless, the STB's final approval of the merger, memorialized in STB Decision No. 44, appeared to allow BNSF even greater access to the Lake Charles area than the STB had initially proposed. Decision No. 44 grants BNSF the following rights:

> (1) to handle traffic of shippers open to all of UP, SP and KCSR at Lake Charles and Westlake, LA; (2) to handle traffic of shippers open to SP and KCSR at West Lake Charles, LA; and (3) to interchange with KCSR, at Shreveport and Texarkana, traffic that was originated by KCSR at or that will be delivered by KCSR to shippers at Lake Charles, Westlake, or West Lake Charles (collectively, the Lake Charles area).

Union Pac. Corp. et al—Control & Merger—S. Pac. Rail Corp. et al, S.T.B. Finance Docket No. 32760, 1996 WL 691928, at *1 (1996) (footnotes omitted).

KCSR petitioned the STB to review Decision No. 44, arguing that the STB did not possess sufficient statutory authority to override the consent provisions found in the four KCSR/T&NO joint use agreements. [Record Document 4, p. 8]. In response to KCSR's

petition, the STB issued Decision No. 63, in which it declined to squarely address the issues raised by KCSR, opting instead to provide guidance on the steps the parties should take to resolve their dispute:

> We need not resolve these matters at this time. As to the terms of the four KCSR-T & NO joint facility agreements, if the parties (KCSR, BNSF, and UP/SP) are not able to come to an agreement, any differences in interpretation of the four joint facility agreements may be submitted to arbitration under the terms of those agreements. If the parties (KCSR, BNSF, and UP/SP) are unable to agree and the arbitral interpretation produces a situation where BNSF access to the Lake Charles area is blocked, BNSF may return to the Board to seek approval of a terminal trackage rights application under new 49 U.S.C. 11102(a); and, if and to the extent that application is ultimately denied, an override of the terms of the four joint facility agreements might be necessary under old 49 U.S.C. 11341(a) [now 49 U.S.C. § 11321(a)].

Union Pacific, WL 691928 at *6. Neither KCSR nor BNSF took further legal action on this issue before the filing of this suit.

After UP and SP successfully merged in 1996 (under the name Union Pacific), a new status quo emerged in the Lake Charles area.  From 1996 to 2012, while UP and KCSR were the only freight carriers providing direct locomotive service in the area, BNSF enjoyed indirect access to Lake Charles shippers via reciprocal interchanges. [Record Document 4, pp. 9-10]. Then, in December of 2012, BNSF declared that it intended to exercise the rights it felt were due to it under Decisions 44 and 63, and it instructed its engineers to move BNSF locomotives directly through Lake Charles terminals to service a BNSF client (CITGO). [Record Document 4, pp. 11-12]. UP and KCSR responded separately, taking issue with BNSF's interpretation of Decision No. 63 and voicing additional safety concerns over BNSF's immediate plans to send locomotives over KCSR/UP tracks. [Record Document 4, pp. 13-

14]. Without conceding the issue of the proper interpretation of the STB decisions, BNSF abandoned its immediate plans to directly connect with CITGO. [Record Document 4, p. 13].

KCSR initiated this lawsuit in response to BNSF's 2012 actions. [Record Document 1, pp. 13-15]. In its amended complaint, KCSR requests that this Court issue a declaratory judgment that "BNSF lacks any lawful right at this time to operate trains over any tracks governed by the joint use agreements, including tracks solely owned by KCSR, without KCSR's express consent." [Record Document 4, p. 16]. Subsequent to BNSF's answer but before it filed this motion, BNSF also filed a terminal trackage rights application with the STB under § 11102(a) seeking direct access to the Lake Charles area terminals.[2] [Record Document 9, p. 121]. BNSF's Motion To Dismiss urges dismissal of this suit for want of subject matter jurisdiction; in the event the Court believes it possesses jurisdiction, BNSF moves the Court to either stay this suit while the STB hears the terminal trackage rights application or refer this suit to the STB. [Record Document 9, p. 6].

**II.   The Law**

A Federal Rule of Civil Procedure 12(b)(1) motion should be granted when it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction. See Lane v. Halliburton, 529 F.3d 548, 557 (5th Cir. 2008). The party seeking to invoke jurisdiction bears the burden of demonstrating its existence. See Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). Indeed, "there is a presumption against

---

[2]The application seeks relief under 49 U.S.C. § 11102(a) and purports to follow the guidelines laid out in Decision No. 63.

subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." Coury v. Prot, 85 F.3d 244, 248 (5th Cir. 1996) (citation omitted). The Declaratory Judgment Act does not confer jurisdiction; accordingly, KCSR must show an independent basis for this Court's jurisdiction. See Lawson v. Callahan, 111 F.3d 403, 405 (5th Cir. 1997). BNSF cites no extrinsic evidence in support of its Rule 12(b)(1) motion; this case thus presents a "facial attack" on the Court's jurisdiction. See Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981). For the purposes of this motion, then, the Court must presume that the allegations contained in the complaint are true. See id.; see also In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007).

Under the Interstate Commerce Commission Termination Act ("ICCTA"), the STB has exclusive authority to approve mergers and acquisitions of rail carriers. 49 U.S.C. § 11321(a).[3] The STB's approval of a merger is contingent upon its finding that the merger serves the public interest. 49 U.S.C. § 11324(c). Before approving a merger, the STB must also consider "whether the proposed merger would have an adverse effect on competition among rail carriers in the affected region or in the national rail system." 49 U.S.C. § 11324(b). To alleviate any anti-competitive effects, the STB may "impose conditions governing the transaction, including the divestiture of parallel tracks or requiring the granting of trackage rights and access to other facilities." 49 U.S.C. § 11324(c).

---

[3] The ICCTA left the ICC's historic exclusive power over railroad mergers and acquisitions intact. See Norfolk and W. Ry. Co. v. Bhd. of R.R. Signalmen, 164 F.3d 847, 853 (4th Cir. 1998). Thus, for the purposes of this analysis, the ICC and the STB are interchangeable agencies. See also Franks Inv. Co. v. Union Pac. R.R. Co., 534 F.3d 443, 445 (5th Cir. 2008)(rev'd on other grounds).

The ICCTA also exempts a carrier participating in an approved merger "from the antitrust laws and from all other law . . . as necessary to let that rail carrier . . . carry out the transaction . . . ." 49 U.S.C. § 11321(a). The exemption extends to both carriers' statutory and common-law obligations. Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n, 499 U.S. 117, 127-130, 111 S. Ct. 1156 (1991)(citations omitted). Several appellate courts have held that in the event of a dispute over whether a § 11321(a) STB order overrides conflicting statutory law, the STB has exclusive jurisdiction to interpret the prior order and determine its proper scope. Ry. Labor Exec.'s Ass'n v. S. Pac. Transp. Co., 7 F.3d 903, 906 (9th Cir. 1993); Union R.R. Co. v. United Steelworkers of Am., 242 F.3d 458, 464, 468 (3d Cir. 2001); Norfolk and W. Ry. Co. v. Bhd. of R.R. Signalmen, 164 F.3d 847, 854-55 (4th Cir. 1998).[4]

### III. Analysis

BNSF argues that KCSR's characterization of this suit as a mere diversity suit is impossibly narrow. Relying on Labor Executives, Steelworkers, and Signalmen, BNSF argues that because any meaningful resolution of the trackage rights at issue in this case requires an interpretation of Decision No. 63 and because the STB has exclusive jurisdiction to determine the proper scope of its own orders, this Court lacks subject matter

---

[4] See also S. Pac. Transp. Co. v. Young, 890 F.2d 777, 778-81 (5th Cir. 1989)(holding that ICC, not the district court, had jurisdiction to determine the res judicata effects of arbitration imposed by ICC as a condition of its approval of SP acquiring tracks.)

jurisdiction.[5] In response, KCSR (1) distinguishes the Labor Executives line of cases from the instant suit and (2) argues that it is well-settled that the STB does not entertain disputes between rail carriers over the meaning of joint use agreements.

Taking KCSR's first argument first, KCSR offers two reasons to distinguish the Labor Executives line of cases. First, KCSR argues that these cases only address conflicts between the ICCTA and the Railway Labor Act ("RLA"), not the ICCTA and state law. This distinction is immaterial. In Dispatchers, the Supreme Court did hold that the STB could exempt carriers from requirements imposed by the RLA. Dispatchers, 499 U.S. at 129-32, 111 S. Ct. at 1164-65. The Supreme Court made clear, however, that the STB's power to override the RLA is an application of the general rule that "§ 11341 [now § 11321] means what it says: A carrier is exempt from all law as necessary to carry out an ICC-approved transaction." 499 U.S. at 129, 111 S. Ct. at 1164 (emphasis in original).[6] The Supreme Court also noted that Congress endowed the STB with the broad powers necessary to carry out its statutory duty to regulate carrier mergers. Id. at 119-20, 111 S. Ct. at 1158-59 (the STB has "exclusive authority to examine, condition, and approve proposed mergers and consolidations of transportation carriers."). The Supreme Court noted that its holding comports with Congressional intent to "promote economy and efficiency in interstate

---

[5] BNSF argues in the alternative that the STB has primary jurisdiction over this suit. [Record Document 9, pp. 22-25]. As the Court rules in BNSF's favor on its principle argument, it is unnecessary to address the primary jurisdiction issue.

[6] See also id. at 128, 111 S. Ct. at 1163 (section 11321(a) "is clear, broad, and unqualified,"), id. at 129, 111 S. Ct. at 1163 ( "the phrase 'all other law' indicates no limitation.").

transportation by the removal of the burdens of excessive expenditure" because "[t]he resolution process for major disputes under the RLA would so delay the proposed transfer of operations that any efficiencies the carriers sought would be defeated." Id. at 132-33, 111 S. Ct. at 1165-66 (internal marks omitted).

The Labor Executives line of cases relied on the Supreme Court's broad understanding of the STB's authority to hold that the STB has exclusive jurisdiction to clarify the scope of its own orders when those orders concern the immunizing power of § 11321(a):

> We are persuaded that because the ICC had exclusive authority to approve the Rio Grande merger and thereby exempt the Railroads from any procedural or substantive law which might otherwise impede that merger, it should have exclusive authority to clarify the scope of its own approval and the corresponding breadth of the section 11341(a) [now 11321(a)] exemption. Such orders would, of course, be subject to appellate review in the circuit court of appeals. . . .

Labor Executives, 7 F.3d at 906 (emphasis added); see also Signalmen, 164 F.3d at 854; Steelworkers, 242 F.3d at 466.

This same reasoning—that it is necessary to recognize the STB's exclusive jurisdiction to determine the scope of its own orders in order to honor Congress' intent that the STB "promote economy and efficiency in interstate transportation" through the use of its immunizing powers—makes as much sense with respect to obligations imposed by state law as it does with respect to obligations imposed by the RLA. Dispatchers, 499 U.S. at 132-33, 111 S. Ct. at 1165-66. Federal district court adjudication of whether an STB order supercedes private contracts, like federal district court adjudication of whether a STB order

overrides the RLA, creates a risk of inconsistent rulings, delay, and ultimately the frustration of the STB's efforts to carry out its Congressional directive.[7] The Court therefore finds the Labor Executives line of cases persuasive.

In its second attempt to distinguish this suit from Labor Executives, KCSR notes that unlike the plaintiffs in Labor Executives, United Steelworkers, and Signalmen, all of whom petitioned the district court to interpret a § 11321(a) STB order in their favor, KCSR asks only that this Court declare that it has certain contractual rights over the tracks in the Lake Charles area. [Record Document 11, p. 17]. The language of KCSR's own amended complaint belies this contention:

> WHEREFORE, KCSR respectfully requests that the Court:
>
>> (a) Enter a declaratory judgment in its favor and against BNSF declaring that BNSF has no lawful right to operate over KCSR track or track subject to the joint agreement referenced hereinabove without the express consent of KCSR . . .

[Record Document 4, p. 16] (emphasis added).[8]  In order to declare that BNSF has "no lawful right" over these tracks, this Court would have to interpret the scope of STB Decisions No. 44 and 63 to determine what rights, if any, those decisions granted to BNSF.

---

[7] See Signalmen, 164 F.3d at 854-55; Cf. Harris v. Union Pac. R.R., 141 F.3d 740, 743 (7th Cir. 1998)(holding that a district court had jurisdiction to entertain a civil rights suit attacking a post-merger labor-management agreement because the agreement was the product of the voluntary consent of the parties, not a STB order conditioning the merger, and because "[o]nly laws that would block the transaction give way [to § 11341(a) superceding power]. None of the civil rights laws puts any obstacle in the way of Union Pacific's acquisition of the Chicago & North Western.").

[8] KCSR's original complaint contains substantially the same language. [Record Document 1, pp. 14-15].

As discussed above, such an analysis would encroach on the STB's "exclusive authority to examine, condition, and approve proposed mergers . . . ." Dispatchers, 499 U.S. at 119-20, 111 S. Ct. at 1159.[9]

Turning to KCSR's second argument—that established STB and appellate precedent provides that the courts, not the STB, are the proper forum to adjudicate a contractual dispute between carriers—each case KCSR cites in support of this argument suffers from one of two defects: either the case does not involve a § 11321(a) STB order or, if it does, the STB order does not conflict with the disputed contract.[10] For instance, in PCS Phosphate Co., Inc. v. Norfolk S. Co., 559 F.3d 212, 220 (4th Cir. 2009), the Fourth Circuit faced the

---

[9] Part (c) of plaintiff's complaint requests that this Court "[o]rder such other further relief as the Court deems just and proper under the circumstances." [Record Document 4, p. 16]. Though this language could conceivably be read to request only a judgment interpreting the four joint use agreements, such a reading raises justiciability concerns because BNSF does not dispute the meaning of the four joint use agreements. See Tilley Lamp Co. v. Thacker, 454 F.2d 805, 807-08 (5th Cir. 1972) ("The Declaratory Judgment Act authorizes relief only in cases of actual controversy . . . under Article III, Section 2 of the United States Constitution.") (internal marks omitted); Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240–41, 57 S. Ct. 461, 464 (1937) ("The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy . . . .") (emphasis added).

[10] KCSR relies on the following cases: PCS Phosphate Co., Inc. v. Norfolk S. Co., 559 F.3d 212, 220 (4th Cir. 2009) ("The STB itself has emphasized that courts, not the STB, are the proper forum for contract disputes, even when those contracts cover subjects that seem to fit within the definition of 'rail transportation.'"); Twp. of Woodbridge, NJ, et al. v. Consol. Rail Co., Docket No. 42053, 2000 WL 1771044, at *3-4 (2000) ("It would be inappropriate for us to rule on the merits of the contract disputes in this case. Such matters are best addressed by the courts."); Canadian Pac. Ry. Co., et al.–Control–Dakota, Minn. & E. R.R. Co., et al., Docket No. FD 35081, 2009 WL 1245964, at *5 (2009) ("The Board's policy is to refrain from interpreting or enforcing private contracts, leaving such issues to be resolved by the parties to the contract or in court.").

issue of whether the STB had exclusive jurisdiction to adjudicate a dispute between a carrier and a mine owner over the enforcement of a private easement covenant between the parties. Neither party was involved in a rail merger. PCS Phosphate, 559 F.3d at 215-16. In Canadian Pac. Ry. Co., et al.–Control–Dakota, Minn. & E. R.R. Co., et al., Docket No. FD 35081, 2009 WL 1245964 (2009), the STB determined that it did not have exclusive jurisdiction to resolve a dispute over the meaning of two joint use agreements because "the Board's statements in [its merger order] were neither intended to interpret the terms of the two agreements at issue, nor to impart additional terms into the agreement." Canadian Pac., 2009 WL 1245964 at *5. In Township of Woodbridge, NJ, et al. v. Consolidated Rail Co., the STB explicitly stated that its authority to override existing law was not implicated because the agreements at issue were not executed prior to its approval of the rail acquisition. Woodbridge, Docket No. 42053, 2000 WL 1771044, at *3-4 (2000). Dispatchers, Labor Executives, Signalmen, and Steelworkers, involve conflicts between STB orders and existing laws. None of the cases cited by KCSR involves this type of conflict. Accordingly, the Court does not find them analogous to the present situation.

**IV.** **Conclusion**

In order to the grant the relief sought by KCSR, the Court would have to encroach upon the STB's exclusive jurisdiction to clarify the scope of Decisions No. 44 and 63. The Court therefore **GRANTS** BNSF's Motion To Dismiss [Record Document 8].

**THUS DONE AND SIGNED** this 9th day of September, 2013.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE